332 P.2d 977

**J. Austin COPE et al., Plaintiffs,**

v.

**Lamont F. TORONTO, Secretary of State of the State of Utah, Defendant,**

Ralph Child, Clyde Olsen, J. Vaughan Wilcox, Alton Packard, and Dean Park, Intervenors.

**No. 8967.**

Supreme Court of Utah.

Oct. 29, 1958.

Richards, Bird & Hart, Salt Lake City, for plaintiff.

E. R. Callister, Jr., Atty. Gen., Robert B. Porter, Jr., Asst. Atty. Gen., for defendant.

Howard, Frazier & Lewis, Provo, for intervenors.

## PER CURIAM.

Plaintiffs seek an extraordinary writ in the nature of mandamus to compel the Secretary of State, Lamont F. Toronto, to notify all county clerks in the state of Utah that the initiative petition, which he heretofore certified as proper to include on the general election ballot, should be removed therefrom and not submitted to the vote of the people on November 4, 1958.

The law sought to be voted upon under the provisions for initiative legislation, Chapter 11, Title 20, U.C.A.1953, relates to the legalizing of pari-mutuel betting on horse races. In March of this year the sponsors filed with defendant an application and secured petition sheets for circulation. On or before July 3, 1958, more than four months prior to the general election as required by law, they filed circulation sheets containing the names and addresses of something in excess of 33,289 persons, represented to be qualified electors, said figure amounting to more than 10% of the votes cast for governor in the 1956 election. On the same day the defendant advised the sponsors that the names were insufficient in number and issued additional sheets permitting the sponsors to obtain more names. On September 16, 1958, additional sheets were filed containing enough names to bring the number above the 33,289 required. The petition was then certified by the Secretary of State to be sufficient, and in accordance with the act the Secretary of State trans-

mitted to the Attorney General a copy of the law proposed for initiation for the formulation of the ballot title for such measure. This the Attorney General did. The Secretary of State thereupon certified to the county clerks of the state the ballot title thus prepared to be printed on the official ballot.

On October 14, 1958, plaintiffs instituted this proceeding for the purpose above mentioned. Their basic contentions are these: that the original sheets did not contain sufficient names; that there is duplication of names; that certain of the names are forgeries; that others represent fictitious persons, or persons deceased. And further, that numerous of the circulation sheets contained no verification by a notary public as required by the act, and that the additional names were filed one day too late. Defendant and the sponsors of the legislation, being joined as third party defendants, filed pleadings joining issue with respect to the above matters.

This proceeding poses a fundamental question: can this court command the Secretary of State to perform an act which is nowhere in the statutes or constitution imposed upon him as a duty of his office? Pertinent to this question are these considerations: under Article VIII, Section 4 of the Constitution of the State of Utah, this court is granted original jurisdiction to issue certain specified writs, among which is the writ of mandamus, which in essence is the request of the plaintiffs here.

The purpose of the writ of mandamus is defined in rule 65B(b) (3) of the Utah Rules of Civil Procedure: "Where the relief sought is to compel an inferior tribunal or any corporation, board or person to perform an act which the law specially enjoins as a duty resulting from an office, trust or station * * *" which is but a restatement of the definition contained in the statutory law of this state since long before statehood. By our decisional law it has been confined to its literal wording.

There does not appear in the statutes dealing with initiative and referendum, Title 20, Chapter 11, U.C.A.1953, any indication that the Secretary of State has the duty of performing the act which this court is asked to command him to do.

Section 16 of the act provides remedies in case the Secretary of State does not perform the duties devolving upon him under the law in connection with an initiative petition: "After such petition is filed the secretary of state shall forthwith cause the number of verified names appearing on each verified circulation sheet to be counted, and, if the number of names so counted equals or exceeds the number of names required by the provisions of this chapter, he shall mark upon the front of the petition the word 'sufficient'; if the

names properly signed and verified do not equal or exceed the number so required, he shall mark on the front thereof the word 'insufficient.'" It is thereafter provided that if the Secretary of State shall refuse to accept and file any petition for initiative: "Any citizen may apply within ten days after such refusal to the Supreme Court for a writ of mandamus to compel him to do so."

■ It is significant to note that Section 16 also provides the remedy in case the Secretary of State marks on the petition copy the word "sufficient." It states that the court may *enjoin* the Secretary of State from certifying or printing on the official ballot the ballot title and number of the measure. It is from the above section that we must find our power to act in the matter. The limitation of 10 days within which a citizen must apply for a writ of mandamus to compel the Secretary of State to accept and file a proper petition for initiative indicates the intent of the legislature to prescribe a relatively short time for such action to be taken in order to coordinate any court procedure with the expedition necessary in election procedure. While there is no express limitation of time in which to seek to enjoin him from certifying an insufficient petition, it strongly suggests the legislature used the emphasized word "enjoin" in said Section 16 advisedly. This indicates quite plainly that the application

for any such injunction should have been made before the Secretary of State had already accomplished the duty imposed on him by law. He having relied upon the circulation sheets certified to him by the county clerk and followed the procedure set out by law for having the proposed act printed on the ballots throughout the state, nowhere in the law is this court granted the authority to issue a writ of mandamus to direct him to undo that which he has done.

■ It seems clear from the context of 20–11–16 that the duty of determining the validity of the names on the circulation sheet as qualified electors is reposed upon the county clerk. It provides, " * * * and the county clerk shall check the names of the signers against the official registration list of his county, and indicate thereon whether or not each name is that of a duly registered voter. He shall then transmit all of the sections to the secretary of state, who shall check off from his record, as they are filed, the number of the sections of the petition so filed." That statute goes on to provide that the Secretary of State shall cause the "number of verified names * * * to be counted" and if the number equals or exceeds the number of names required he shall mark the petition "sufficient." Both the context of this section and common sense suggest that the county clerk is in a better position to check the names, and that the Secretary

of State may well rely upon the certification by the county clerk. When the Secretary of State or other elected executive official has performed his duty in the administrative branch of the government, it has always been the policy of courts to be reluctant to interfere with the manner in which such duties were carried out. It is only when there is fraud, falsity, bad faith or clear default or abuse in the performance of duty that the courts will interfere in the manner in which the executive department performs its duties prescribed by law.

Related to the above and in support of the conclusion we reach are the basic principles: that the act authorizing initiative legislation shall receive a liberal construction to effectuate its purpose that the people be permitted to vote and express their will on proposed legislation; and the corollary thereto, that all doubts as to technical deficiencies or failure to comply with the exact letter of procedure will be resolved in favor of the accomplishment of that purpose.

In view of the foregoing, and the fact that the writ of mandamus here sought invokes the discretion of the court, we are of the opinion that under the circumstances presented to us, the proper course is to deny the writ.

It is so ordered.