H. A. BOUCHER and the State of Alaska, Appellants,

·v.

Elton E. ENGSTROM and George T. Fraley, Appellees.

Deward HALSY et al., Appellants,

v.

Elton E. ENGSTROM and George T. Fraley, Appellees,

v.

H. A. BOUCHER and the State of Alaska, Appellees.

Nos. 2232 and 2249.

Supreme Court of Alaska.

Nov. 15, 1974.

Norman C. Gorsuch, Atty. Gen., Ray C. Preston, Asst. Atty. Gen., Juneau, for Boucher and the State.

Allan A. Engstrom, Engstrom & Evans, Juneau, for Engstrom and Fraley.

Murphy L. Clark, Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for Halsy and others.

Before RABINOWITZ, Chief Justice, CONNOR, ERWIN, and FITZGERALD, Justices, and SCHULZ, Superior Court Judge.

## OPINION

RABINOWITZ, Chief Justice.

Lieutenant Governor Boucher and the State of Alaska appeal from a superior court decision enjoining placement on the primary ballot of an initiative proposal to relocate the state capital.

The right to propose and enact laws by the initiative is reserved to the people of the State of Alaska by Article XI, Section 1 of the Alaska Constitution which provides:

The people may propose and enact laws by the initiative, and approve or reject acts of the legislature by the referendum.

Pursuant to Section 6 of this article, the legislature enacted procedures for placement of an initiative on an election ballot.[1] These procedures require the filing of an application with the lieutenant governor. Under AS 15.45.030, the application must set forth the proposed bill, furnish the names of three sponsors to serve as an initiative committee, and contain the signatures of not less than 100 qualified voters who are designated as sponsors.

On February 8, 1973, an initiative committee filed an application providing for an initiative entitled "An Act relocating the capital of the State of Alaska and providing for selection, planning, and construction at the new location." The application was reviewed by the lieutenant governor to determine whether it should be certified.[2] This review included an examination of the proposed bill to ascertain if it was in the form required by the initiative procedural statutes. The proper form is detailed by AS 15.45.040 which requires the proposed bill to be confined to one subject, with the subject expressed in the title, to contain a prescribed enacting clause, and to exclude those subjects restricted by AS 15.45.010. AS 15.45.010 provides in part:

[N]o initiative may be proposed to dedicate revenues, to make or repeal appropriations, to create courts or prescribe their rules, or *to enact local or special legislation.* (emphasis added)

On March 12, 1973, the application was approved and certified by the lieutenant governor, who then notified the initiative committee that the form of the application was in compliance with AS 15.45.040.

Following certification of the application, petitions were prepared and circulated by the sponsors.[3] The requisite number of signatures was obtained, and the petitions were returned to the lieutenant governor. On March 1, 1974, the initiative committee was notified that the petitions were properly filed and that the initiative proposition would be placed on the August 27, 1974, primary election ballot.

Engstrom filed suit on March 28, 1974, seeking to enjoin placement of the initia-

---

1. Alaska Const. art. XI, § 6 provides in part: "Additional procedures for the initiative and referendum may be prescribed by law."

2. *See* AS 15.45.070, 15.45.080.

3. In order to place the initiative on the ballot, the petitions must be signed by qualified voters equal in number to 10 percent of those

who voted in the preceding general election and resident in at least two-thirds of the election districts of the state. The signatures must be obtained within one year from the time the sponsors receive notice from the lieutenant governor that the petitions are ready for delivery to them. *See* A.S. 15.45.-140.

tive on the ballot because the subject of the proposed bill was allegedly improper. Engstrom asserted that the initiative was fatally defective because, by excluding the Anchorage and Fairbanks areas from consideration as possible capital sites, the proposition was local or special legislation.[4] Subsequently, the superior court heard argument on cross-motions for summary judgment and Boucher's motion to dismiss. The court granted Engstrom's motion for summary judgment and enjoined the lieutenant governor from placing the initiative on the ballot. The superior court's decision was grounded on its conclusion that the exclusion of Anchorage and Fairbanks as potential sites for the new capital rendered the initiative unconstitutional under Article XI, Section 7 of the Alaska Constitution, which prohibits use of the initiative to enact local or special legislation. Article XI, Section 7 of the Alaska Constitution provides in part:

> The initiative shall not be used to dedicate revenues, make or repeal appropriations, create courts, define the jurisdiction of courts or prescribe their rules, or enact local or special legislation.

Boucher and the State of Alaska have appealed the superior court's ruling.

■ Boucher first argues that Engstrom's action is barred by AS 15.45.240, the statutory provision for judicial review of the lieutenant governor's determination. AS 15.45.240 reads as follows:

> Any person aggrieved by a determination made by the lieutenant governor may bring an action to have the determination reviewed *within 30 days of the date on which notice of the determination was given* by any appropriate remedy in the superior court. (emphasis added)

Boucher's position is that since no action was brought within thirty days of March 12, 1973, when he first certified the initiative application,[5] suit questioning the proposed bill's constitutionality can be commenced only after the bill has been approved by the electorate. Engstrom argued, and the superior court agreed, that the thirty-day provision of AS 15.45.240 applies solely to the initiative committee, not the general public, and therefore Engstrom's action was not barred. The thirty-day period specified in AS 15.45.240 begins to run when the lieutenant governor gives notice of his determination. In the case at bar, only the members of the initiative committee were given notice of the lieutenant governor's determination.[6] In this regard, the superior court, in its decision, stated in part:

> It is fundamental that due process requires notice and the statutory scheme of AS 15.45.010–240 [15.45.240] does not provide for the giving of notice to the general public. The limitation of AS 15.45.240 only applies to those who receive notice of the lieutenant governor's action, the initiative committee.

■ A non-sponsor's right to obtain judicial review of the lieutenant governor's certification of an initiative application cannot constitutionally be precluded prior to giving notice to the public that certification has been made. Any other interpretation of AS 15.45.240 would render the statute unconstitutional. Thus, we hold that the superior court did not err in refusing to dismiss Engstrom's suit on the ground of its untimeliness.

■ Alternatively, Boucher argues that if Engstrom's suit is not barred by AS 15.-45.240, then it should have been dismissed

4. In his complaint, Engstrom raised additional objections to the initiative, but these points were not argued before the superior court or this court and will not be considered in this appeal.

5. Engstrom's action was brought on March 28, 1974, over a year after Boucher had certified the application pursuant to AS 15.45.-070.

6. AS 15.45.050, the only statutory provision regulating the manner of notice concerning initiative applications, provides:

> Notice of the initiative committee on any matter pertaining to the application and petition may be served on any member of the committee in person or by mail addressed to a committee member as indicated on the application.

on the ground that it was prematurely brought. In support of this contention, the lieutenant governor relies primarily on the general proposition that courts will refuse to pass on the constitutionality of proposed legislation. Typical of court decisions supportive of the rule is Iman v. Bolin,[7] where the court stated that

> the power of the people to legislate is as great as the power of the legislature to legislate. . . .
>
> . . . . . .
>
> Moreover, even were the measure in conflict with the Constitution, this has no bearing on the right of the people to enact it. . . . Only after legislation becomes law will its constitutionailty be tested.[8]

This court, in Starr v. Hagglund[9] and Walters v. Cease,[10] although recognizing the general limitation that only enacted legislation is subject to judicial review, held that our courts are empowered to review an initiative to ascertain whether it complies with the particular constitutional and statutory provisions regulating initiatives. Our approach in Starr and Walters has been adopted in other jurisdictions. In Bowe v. Secretary of the Commonwealth,[11] the court acknowledged the general rule that courts will refrain from giving advisory opinions on the constitutionality of statutes and then went on to state in regard to initiatives prior to submission to the electorate for approval or rejection:

> The people for their own protection have provided that the initiative shall not be employed with respect to certain matters. Unless the courts had power to enforce those exclusions, they would be futile . . . . We think that the question whether an initiative petition relates to an excluded matter is a justiciable question.[12]

As previously noted, Article XI, Section 7 of our Constitution specifically precludes use of the initiative to enact "local or special legislation".[13] Given this explicit constitutional prohibition, we hold that the superior court was correct in its determination that Engstrom's suit was not premature.

■ Engstrom also argues that Boucher's motion to dismiss was correctly denied on the basis that the lieutenant governor never made a determination as to the initiative's constitutionality. He bases this argument on Article XI, Section 2 of the Alaska Constitution, which requires the lieutenant governor to review the initiative application as to its "proper form". Boucher asserts that the legislature expanded the scope of review in enacting AS 15.45.040, which requires that a determination be made as to whether unconstitutional subjects were included. We believe Boucher's analysis is correct. Pursuant to Article XI, Section 6 of the Alaska Constitution, the legislature enacted procedures for placement of an initiative on the ballot, requirements regarding form of the initiative, and a statutory restatement of the constitutional restrictions on the subject matter of an initiative. AS 15.45.010–15.-45.080. In accord with these legislative directives, the lieutenant governor is

---

7. 98 Ariz. 358, 404 P.2d 705 (1965).

8. *Id.* at 709 (citations omitted).

9. 374 P.2d 316 (Alaska 1962).

10. 394 P.2d 670 (Alaska 1964).

11. 320 Mass. 230, 69 N.E.2d 115 (1946). *See also* Iman v. Bolin, 98 Ariz. 358, 404 P.2d 705 (1965).

12. 69 N.E.2d at 128.

13. AS 15.45.010 embodies a statutory restatement of the constitutional restriction found in art. XI, § 7 of the Alaska Constitution.

General contentions that the provisions of an initiative are unconstitutional are justiciable only after the initiative has been enacted by the electorate. State ex rel. O'Connell v. Kramer, 73 Wash.2d 85, 436 P.2d 786 (1968) ; Colorado State Civil Serv. Emp. Ass'n v. Love, 167 Colo. 436, 448 P.2d 624 (1968) ; Bowe v. Secretary of the Commonwealth, 320 Mass. 230, 69 N.E.2d 115 (1946) ; State ex rel. Bullard v. Osborn, 16 Ariz. 247, 143 P. 117 (1914).

obliged to review the initiative petition to determine if it is in compliance with the statutes regulating initiatives. If he determines that the initiative complies with AS 15.45.010, we believe such a determination necessarily carries with it a finding on the lieutenant governor's part that the initiative is in conformity with the parallel provisions of Article XI, Section 7 of the Alaska Constitution. As we previously held, after the lieutenant governor decides that the initiative is properly filed and before the initiative is voted on by the electorate, the lieutenant governor's determination that the initiative is not in conflict with Article XI, Section 7 of the Alaska Constitution or with AS 15.45.010, can be challenged by anyone.[14] Thus, we conclude that the superior court had jurisdiction to decide the constitutionality of the questioned initiative and affirm its denial of Boucher's motion to dismiss Engstrom's complaint.

We next turn to the question of whether the initiative was correctly characterized by the superior court as local or special legislation. If the trial court's analysis is accurate, the initiative is both unconstitutional in light of the prohibition found in Article XI, Section 7 of the Alaska Constitution and violative of the parallel statutory prohibition found in AS 15.-45.010. Alaska's constitutional prohibition against enacting local or special legislation by the initiative is common to a majority of state constitutions.[15] What constitutes

local or special legislation has been defined by one authority as follows:

If the subject of the statute may apply to, and affect the people of, every political subdivision of the state, it is a law of general nature . . . .

The substance of the act will frequently determine its generality, but this only in conjunction with the reasonableness of the regulation or the classification of the subject matter. . . .

General laws . . . therefore . . . are general . . . because their subject matter is of common interest to the whole state.[16]

Thus, in deciding whether an initiative is local or special legislation, we must consider the subject matter of the initiative and determine whether the subject matter is of common interest to the whole state.[17] In our view, the question of the location of Alaska's capital has obvious statewide interest and impact. Access to Alaska's seat of government is of substantial importance to citizens of Alaska throughout the state.[18] While the two areas that initially will be most significantly involved are Juneau and the new capital site, the entire state will be affected on a long-term basis not only in regard to accessibility, but additionally as to such factors as potentially increased governmental efficiency flowing from a planned unified capital complex.

It is established that a law does not cease to be general, and become local or special, because it operates only in certain

---

14. As indicated previously, we believe the thirty-day provision of AS 15.45.240 applies solely to the initiative committee.

15. 2 Sutherland Statutory Construction § 40.01 (4th ed. C. Sands 1973). Sutherland states that the prohibition against local legislation finds its genesis in situations where special interest groups wielded disproportionate power in many legislatures, resulting in legislation of special benefit to such groups.

16. *Id.* § 40.02, at 139–40 (footnotes omitted).

17. The Report of the Committee on Direct Legislation, Amendment and Revision presented at the Alaska Constitutional Convention reflects the Committee's interest in

adopting this as the criterion for determining the character of legislation. The Committee report states:

[S]pecial or local laws . . . are of interest to only one group of people or people in only one portion of the state.

Counsel for Boucher argue that the appropriate test is whether "the proposal is of interest to, and would benefit the state as a whole", and that the requirement of uniformity of operation of the law in local or special legislation cases is irrelevant in a capital relocation contest.

18. The magnitude of the subject initiative's impact on the entire state does not appear to be contested by Engstrom.

subdivisions of the state. In Walters v. Cease, 394 P.2d 670 (Alaska 1964), we held that a proposed act incorporating eight specifically designated areas of the state as organized boroughs was an improper subject for referendum because it was local and special legislation. In the context of that case, we observed that the legislation was local because it operated on "only a limited number of geographical areas, rather than being widespread in its operation throughout the state". We disapprove this description of local legislation and adopt the view expressed herein.

In Coyle v. Smith,[19] the court faced the similar question of whether a measure to relocate the capital of the State of Oklahoma to a specific location was local or special legislation. The Oklahoma Supreme Court found that an act providing for the permanent location of the state capital applied to and affected the entire state, and "the very fact that it locates [the capital] in a particular spot does not make it a special law".[20]

In the case at bar, the site for the new capital of the State of Alaska has not been chosen and will not be selected until after the initiative has been passed. The initiative provides that, following its passage, a capital selection committee must select not more than three potential capital sites located west of meridian 141° west longitude. Although the initiative offers no specific alternative to the present site, it establishes certain criteria to be satisfied by the new capital site, namely:

> None of these sites shall be within a radius of thirty (30) miles of the City of Anchorage or Fairbanks. Each site shall consist of not less than 100 square miles of land that shall be owned by or be acquired by the State at no charge to the State. All such land shall be contiguous but not necessarily in a rectangular block. All such locations shall be immediately classified as 'reserved use land' by the Division of Lands. Each location shall be selected with due regard to its accessibility by road, railroad, 24 hour airline service, and terrain necessary for airport construction.

The exclusion of the Anchorage and Fairbanks areas led to the superior court's holding that the initiative petition was local or special legislation. We hold this ruling erroneous.

In reviewing an initiative prior to submission to the people, the requirements of the constitutional and statutory provisions pertaining to the use of initiatives should be liberally construed so that "the people [are] permitted to vote and express their will on the proposed legislation . . . all doubts as to technical deficiencies or failure to comply with the exact letter of procedure will be resolved in favor of the accomplishment of that purpose."[21] When one construction of an initiative would involve serious constitutional difficulties, that construction should be rejected if an alternative interpretation would render the initiative constitutionally permissible.[22]

In determining the constitutionality of the capital move initiative, the superior court declined to accord the subject initiative a liberal construction. Instead, the superior court attempted to ascertain whether the Anchorage and Fairbanks areas were

---

19. 28 Okl. 121, 113 P. 944 (1911).

20. *Id.* at 949. In State v. Corson, 67 N.J. Law 178, 50 A. 780, 785 (1901), the court stated in part: "A statute is not special or local merely because it authorizes or prohibits the doing of a thing in a certain locality. It is, notwithstanding this fact, a general law, if it applies to all citizens of the state, and deals with a matter of general concern." *Compare* County of Cameron v. Wilson, 160 Tex. 25, 326 S.W.2d 162 (1959).

21. Cope v. Toronto, 8 Utah 2d 255, 332 P.2d 977, 979 (1958). *See also* Alexander v. Mitchell, 119 Cal.App.2d 816, 260 P.2d 261 (1953); Brownlow v. Wunsch, 103 Colo. 120, 83 P.2d 775 (1948).

22. 2A Sutherland Statutory Construction § 45.00, at 33–34 (4th ed. C. Sands 1973); Cope v. Toronto, 8 Utah 2d 255, 332 P.2d 977, 979 (1958).

wrongfully excluded from consideration, since the two cities appeared to satisfy the capital site selection criteria provided for under the terms of the initiative. We believe the focus of the trial court's inquiry was improper. For the test of constitutionality of the subject initiative is not whether Anchorage and Fairbanks were treated differently, but rather whether there is a reasonable basis for the disparity in treatment.[23]

Legislation, whether enacted by the legislature or by the initiative, need not operate evenly on all parts of the state to avoid being classified as local or special.[24] The critical element is whether there is a rational basis for the particular classification.[25] More particularly, the classification must bear a reasonable and proper relationship to the purposes of the act and the problem sought to be remedied. This analysis is articulated in Bridgewater v. Hotz,[26] where the court upheld an act establishing different election procedures for counties having less than three million people and a township form of government. There the court said:

> If there is a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not the [legislature] may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable

only to such persons or objects. . . . . In this regard, it is well settled that an act is not local or special merely because of a legislative classification based upon population or territorial differences. Such classifications will be sustained where founded upon a rational difference of situation or condition existing in the objects upon which it rests, and where there is a *reasonable basis for the classification in view of the objects and purposes to be accomplished.* (emphasis added)[27]

If there is any conceivable factual basis which would render an initiative's classification constitutional, our courts are then obligated to uphold the initiative. In determining the constitutionality of the capital move initiative, our inquiry is not directed to whether other approaches would be more reasonable, or to the wisdom of the goals embodied in moving the capital of Alaska from Juneau.[28]

With these criteria in mind, we are of the view that reasonable factual bases are present for the exclusion of Anchorage and Fairbanks from consideration as a new capital site. Anchorage and Fairbanks are established urban centers that are now in the process of experiencing numerous complex problems accompanying rapid growth resulting from the impact of the commencement of construction of the Trans-Alaska pipeline. In order to

23. Given the statewide impact of a state capital relocation issue, Boucher contends that it is unnecessary to reach this question, asserting that the people have a right to be arbitrary in deciding where the state capital *should be located.*

24. *See* Laman v. Harrill, 233 Ark. 967, 349 S.W.2d 814, 816 (1961); Kloss v. Suburban Cook County Tuberculosis Sanitarium Dist., 404 Ill. 87, 88 N.E.2d 89, 91 (1949).

25. The test to be employed is substantially the same as that which would be applied to legislative classifications challenged as being contrary to the equal protection clause. *See* 2 Sutherland Statutory Construction § 40.04,

at 149 (4th ed. C. Sands 1973); City of Los Angeles v. Shell Oil Co., 4 Cal.3d 108, 93 Cal.Rptr. 1, 8–9 n. 8, 480 P.2d 953 (1971).

26. 51 Ill.2d 103, 281 N.E.2d 317 (1972).

27. *Id.* at 322 (citations omitted).

28. *Id.,* wherein the *Bridgewater* court stated: "Whether the course chosen is wise or whether it is the best means to achieve the desired result is not a proper subject of judicial inquiry." *See also* DeArmond v. Alaska State Dev. Corp., 376 P.2d 717 (Alaska 1962).

allow for orderly expansion of these two urban centers, thirty-mile buffer zones were established by the initiative around Anchorage and Fairbanks. The initiative's exclusion of Anchorage and Fairbanks was not arbitrary, but was premised on the view that the new capital should be a planned capital and one that should not be located in the relatively heavily urbanized areas of Anchorage and Fairbanks. We therefore hold that the exclusion of Anchorage and Fairbanks is a reasonable classification and that such classification did not render the subject initiative local or special legislation.

In light of the foregoing, we reverse the superior court's determination that the initiative was local and special legislation and remand with directions to dissolve the injunction heretofore entered.[29]

Affirmed in part, reversed in part.

BOOCHEVER, J., not participating.

29. Oral argument was held in this case on June 26, 1974. Due to the time constraints involved, on June 27, 1974, we entered an order which indicated the holdings set forth in this opinion, and directed that the subject initiative be placed on the August 27, 1974, primary election ballot.