*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BARBARA JONES, in an official capacity as Municipal Clerk for the Municipality of Anchorage, and the MUNICIPALITY OF ANCHORAGE, | ) ) ) ) | Supreme Court No. S-18102 |
| | ) | Superior Court No. 3AN-20-08262 CI |
| Appellants, | ) ) | O P I N I O N |
| v. | ) ) | No. 7592 – May 6, 2022 |
| RUSSELL BIGGS, | ) ) | |
| Appellee, | ) ) | |
| and | ) ) | |
| MEG ZALETEL, | ) ) | |
| Intervenor. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: Ruth Botstein, Assistant Municipal Attorney, and Patrick N. Bergt, Municipal Attorney, Anchorage, for Appellants. Samuel C. Severin, Chandler, Falconer, Munson & Cacciola, LLP, Anchorage, for Appellee. Thomas P. Amodio, Reeves Amodio LLC, Anchorage, for Intervenor.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

CARNEY, Justice.

## I.	INTRODUCTION

A citizen filed an application for a petition to recall a member of the Anchorage Assembly, alleging that the assembly member had committed misconduct in office by participating in an indoor gathering of more than 15 people in violation of an executive order. The municipal clerk rejected the application after concluding that the alleged conduct did not constitute misconduct in office. The superior court reversed the clerk's denial of the application. We affirm the superior court's decision.

## II.	BACKGROUND

The Anchorage Assembly is the Municipality of Anchorage's legislative body and holds weekly meetings generally open to the public. On August 3, 2020, the Anchorage mayor issued Executive Order 15 (EO-15) to slow the spread of COVID-19. The order limited indoor gatherings to no more than 15 people.

Russell Biggs filed an application for a petition to recall Assembly Member Meg Zaletel. The Municipal Clerk denied Biggs's application, which alleged that Zaletel "committed misconduct in office" when she "violat[ed] EO-15" by "knowingly participating in an indoor gathering of more than 15 people (a meeting of the Anchorage Assembly)" and "continuing to participate in an indoor gathering of more than 15 people . . . after being specifically informed of the violation." The Clerk deemed the allegation legally insufficient because " 'misconduct in office' requires some component of dishonesty, private gain, or improper motive — which is not alleged within Recall Application 2020-05." The Clerk based her interpretation of "misconduct in office" on the definition of "official misconduct" in the 2019 edition of Black's Law Dictionary, which includes a requirement of corruption or abuse of office, and the constitutional and statutory history of Alaska's recall provisions.

Biggs appealed the Clerk's denial of his application to the superior court. He argued that the Clerk erred by relying on Black's Law Dictionary's definition of

"official misconduct." Biggs asserted that the Clerk should not have used "technical law dictionaries to interpret statutes" and instead should have interpreted them according to their "common and approved usage" as required by law.[1] Biggs also argued that, if using Black's was appropriate, the Clerk should have relied on the broader definition of "misconduct" as "[a] dereliction of duty; unlawful, dishonest, or improper behavior, esp[ecially] by someone in a position of authority or trust," because it better aligned with the ordinary meaning of misconduct. Biggs argued that using the 2019 Black's definition of "official misconduct" would render AS 29.26.250's "misconduct in office" ground for recall equivalent to the *crime* of official misconduct found in AS 11.56.850, contrary to the requirement that recall statutes are to be construed liberally. He also argued that the legislative history of the municipal recall statute did not support the Clerk's narrow reading and interpretation of "misconduct in office."

The superior court agreed with Biggs. It found that the Clerk's "inaccurate" interpretation of "misconduct in office" "was overly reliant on the current definition of 'official misconduct.' " The court reasoned that the 2019 edition of Black's was "far less probative of legislative intent than the definitions contained in the [e]dition in print in 1985 when AS 29.26.250 was enacted."[2] Additionally, the court found that the

---

[1]     Alaska Statute 01.10.040(a) directs that "[w]ords and phrases shall be construed . . . according to their common and approved usage."

[2]     We note that the current grounds for recall were established in 1972, though the statute was reorganized in 1985. *Compare* ch. 118, § 2, SLA 1972, *with* ch. 74, § 9, SLA 1985; *see also Meiners v. Bering Strait Sch. Dist.*, 687 P.2d 287, 295 (Alaska 1984) (discussing history of recall provisions in Alaska). The superior court referred to the 1979 Fifth Edition of Black's Law Dictionary, but it should have looked at the Revised Fourth Edition published in 1968. The error, however, is harmless because the relevant portion of the definition of "misconduct in office" is identical in both the 1968 and 1979 versions. *Compare Misconduct in Office*, BLACK'S LAW DICTIONARY (rev. 4th ed. 1968), 
(continued...)

corruption requirement added a scienter element akin to that required for official misconduct, which would undermine the goals of the recall statutes.

The court noted that the 1979 edition of Black's defined "misconduct in office" as "[a]ny unlawful behavior by a public officer in relation to the duties of his office, willful in character."[3] This definition made clear, the superior court concluded, that "Zaletel's alleged unlawful behavior of participating in an over-capacity meeting as a public officer, after being warned that the gathering was unlawful, would constitute misconduct in office." The superior court reversed the Clerk's denial of Biggs's application for a petition.

The Municipality appeals the superior court's decision. We agree with the superior court's decision and analysis. We affirm the court's decision and adopt the relevant sections of its order.

## III.   STANDARD OF REVIEW

This appeal raises only questions of law regarding the interpretation of Alaska's recall statutes. "When interpreting Alaska's recall statutes, we exercise our independent judgment and adopt 'the rule of law which is most persuasive in light of precedent, policy and reason.' "[4]

---

[2]      (...continued)
with *Misconduct in Office*, BLACK'S LAW DICTIONARY (5th ed. 1979).

[3]      Citing *Misconduct in Office*, BLACK'S LAW DICTIONARY (5th ed. 1979) (identical in 1968 edition).

[4]      *State, Off. of Lieutenant Gov., Div. of Elections v. Recall Dunleavy*, 491 P.3d 343, 354 (Alaska 2021) (quoting *von Stauffenberg v. Comm. for an Honest & Ethical Sch. Bd.*, 903 P.2d 1055, 1059 n.9 (Alaska 1995)).

## IV. DISCUSSION

The Alaska Constitution provides that "[a]ll elected public officials in the State, except judicial officers, are subject to recall by the voters" and that the legislature shall set forth the grounds and procedures for recall.[5] Alaska Statutes 29.26.240-.360 govern the recall of municipal officials and permit their recall on three grounds: "misconduct in office, incompetence, or failure to perform prescribed duties."[6] To recall a municipal official an applicant must first file an application with the municipal clerk; among other requirements, the application must describe "in 200 words or less . . . the grounds for recall stated with particularity."[7] If the clerk determines that the application meets the requirements, the clerk must issue a recall petition.[8] Proponents of the recall then gather signatures and file the petition with the clerk, who must certify whether the petition is sufficient.[9] If it is certified as sufficient, the clerk must submit it to the governing body and a recall election must be held.[10]

Alaska's for-cause recall process follows "a middle ground" between states that treat recall as "special, extraordinary, and unusual" and construe grounds narrowly in favor of the office holder, and states that treat recall as "essentially a political process"

---

[5] Alaska Const. art. XI, § 8.

[6] AS 29.26.250.

[7] AS 29.26.260.

[8] AS 29.26.270.

[9] AS 29.26.280-.290.

[10] AS 29.26.310-.320.

and construe "all doubts . . . in favor of placing the question before the voters."[11]  This means that a reviewing court must take factual allegations in the petition as true and assess "whether such facts constitute a prima facie showing of" at least one of the statutory grounds for recall.[12]  The recall statutes should be "liberally construed so that 'the people [are] permitted to vote and express their will,' "[13] and the court must "avoid wrapping the recall process in . . . a tight legal straitjacket" navigable only "by an attorney who is a specialist in election law matters."[14]  The threshold for legal and factual sufficiency is low:  the allegation must be based on a statutory ground for recall and the facts alleged must describe the relevant acts or omissions with sufficient particularity to give the targeted official a "fair opportunity to defend his conduct in a rebuttal limited to 200 words."[15]

At issue in this case is whether participating in a meeting in knowing violation of an executive order constitutes "misconduct in office."  The municipal recall statute does not define the term.[16]  We have held there was no prima facie showing of misconduct in office when elected officials "legally exercis[ed] the discretion granted to

---

[11]     *State, Off. of Lieutenant Gov., Div. of Elections v. Recall Dunleavy*, 491 P.3d 343, 352-53 (Alaska 2021) (quoting *Meiners v. Bering Strait Sch. Dist.*, 687 P.2d 287, 294 (Alaska 1984)).

[12]     *Id.* at 356 (quoting *von Stauffenberg v. Comm. for an Honest & Ethical Sch. Bd.*, 903 P.2d 1055, 1059-60 (Alaska 1995)).

[13]     *Meiners*, 687 P.2d at 296 (alteration in original) (quoting *Boucher v. Engstrom*, 528 P.2d 456, 462 (Alaska 1974)); *Recall Dunleavy*, 491 P.3d 343, 355 (Alaska 2021).

[14]     *Meiners*, 687 P.2d at 301.

[15]     *Id.* at 302.

[16]     *See* AS 29.26.250.

them by law."[17]  But we have not defined "misconduct in office,"[18] and we need not do so here.  As we held in *Meiners* and *Recall Dunleavy*, recall statutes must be "liberally construed so that 'the people [are] permitted to vote and express their will.' "[19]  The Clerk did the opposite by applying a definition that added requirements including a criminal degree of intent, and "wrapp[ed] the recall process in . . . a tight legal straightjacket."[20]

The superior court concluded that the Clerk "applied an inaccurate definition of 'misconduct in office' in determining that [Biggs's] application . . . was insufficient, and concluded incorrectly that a showing of 'some component of dishonesty, private gain, or improper motive' was required for the allegation's legal sufficiency."  The court therefore reversed the Clerk's denial.  We agree and adopt the superior court's reasoning as quoted below.[21]

---

[17]  *von Stauffenberg*, 903 P.2d at 1060.

[18]  *See Meiners*, 687 P.2d at 299 n.14 (declining to decide whether alleged conduct amounted to misconduct in office when it met different statutory ground for recall).

[19]  *Id.* at 296 (alteration in original) (quoting *Boucher v. Engstrom*, 528 P.2d 456, 462 (Alaska 1974)); *State, Off. of Lieutenant Gov., Div. of Elections v. Recall Dunleavy*, 491 P.3d 343, 355 (Alaska 2021).

[20]  *Meiners*, 687 P.2d at 302.

[21]  The excerpt of the superior court's decision has been revised and modified to conform with our format.  Bracketed footnotes and in-text brackets regarding the Black's edition used indicate substantive modifications made where needed.

\* \* \* \*

The Municipal Clerk's rejection of Biggs's application . . . was based on the Clerk's interpretation of the meaning of "misconduct in office." "Misconduct in office" is not defined in the recall statutes or the municipal code. The Municipal Clerk reasoned that a legally sufficient allegation of misconduct "requires some component of dishonesty, private gain, or improper motive." The Clerk derived this rule from a review of the [2019] Black's Law Dictionary's definition of "official misconduct": "1. A public officer's corrupt violation of assigned duties by malfeasance, misfeasance, or nonfeasance. 2. Abuse of public office."[34] She also looked to the Black's Law Dictionary's definition of "corrupt" as "[h]aving unlawful or depraved motives; given to dishonest practices, such as bribery."[35]

Biggs argues that resorting to the definitions of "official misconduct" and "corrupt" in Black's Law Dictionary was improper for a few different reasons. First, Black's is a technical law dictionary, and the "words and phrases" of Alaska's statutes are to be "construed . . . according to their common and approved usage."[36] The Alaska Supreme Court specifically instructed that recall statutes "should be liberally construed so that 'the people

---

[34] *Official Misconduct*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[35] *Corrupt*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[36] AS 01.10.040; *see also, e.g.*, *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 16 (Alaska 2014); *Norville v. Carr-Gottstein Foods Co.*, 84 P.3d 996, 1001 n.3 (Alaska 2004).

[are] permitted to vote and express their will.' "[37] Thus, Biggs argues that a broader, more accessible meaning of the phrase "misconduct in office" should apply.

Second, while conceding that the Alaska Supreme Court will at times use Black's to assess common meanings of words and phrases for the purpose of statutory interpretation,[38] Biggs argues that there are instances in which the Court has rejected Black's definition when it is overly precise in a way that is not on point for the litigated issue.[39] Here, he asserts that using the Black's definition of "official misconduct" is unhelpful because it adopts a definition that is the functional equivalent of the crime of official misconduct with no suggestion of any legislative intent to do so.[40] Alaska has long had a statute listing the elements of the crime of official misconduct,[41] but there is no indication in the record that the legislature intended for that definition to apply in the civil context of a recall for misconduct in office.

_____

[37] *Meiners v. Bering Strait Sch. Dist.*, 687 P.2d 287, 296 (Alaska 1984) (alteration in original) (quoting *Boucher v. Engstrom*, 528 P.2d 456, 462 (Alaska 1974)).

[38] *E.g.*, *Benavides v. State*, 151 P.3d 332, 335-36 (Alaska 2006); *Univ. of Alaska v. Geistauts*, 666 P.2d 424, 430 (Alaska 1983).

[39] *Parson v. State, Dep't of Rev.*, 189 P.3d 1032, 1037 (Alaska 2008); *Little Susitna Constr. Co. v. Soil Processing, Inc.*, 944 P.2d 20, 24 (Alaska 1997); *Rhines v. State*, 30 P.3d 621, 625-26 (Alaska 2001).

[40] AS 11.56.850(a).

[41] Alaska Statute 11.56.850(a) provides:

A public servant commits the crime of official misconduct if, with intent to obtain a benefit or to injure or deprive another person of a benefit, the public servant (continued...)

This court agrees with the reasoning . . . in *Aderhold v. City of Homer & Heartbeat of Homer* that, in a recall context, "requir[ing] misconduct in office to be criminal would . . . undermine the intent and effectiveness of the recall statutes . . . and would deny the voters' right to effectively seek recall of their elected officials."[42]

Biggs further argues that the definition of the word "misconduct," when not defined within the context of the crime of official misconduct, has a broader meaning more compatible with the recall context. He cites to Black's definition of misconduct as "[a] dereliction of duty; unlawful, dishonest, or improper behavior, esp[ecially] by someone in a position of authority or trust."[43] He argues that this definition is more in line with the ordinary meaning of misconduct one finds in non-technical dictionaries. And the requirement that the misconduct must be "in office" can be met by showing that the subject was acting in his or her official capacity when committing the alleged misconduct.

---

[41]    (...continued)

(1) performs an act relating to the public servant's office but constituting an unauthorized exercise of the public servant's official functions, knowing that act is unauthorized; or

(2) knowingly refrains from performing a duty which is imposed upon the public servant by law or is clearly inherent in the nature of the public servant's office.

[42]    No. 3AN-17-06227 CI at 4 (Alaska Super., May 23, 2017).

[43]    *Misconduct*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Thus, borrowing the corrupt element from "official misconduct" is unnecessary for the purpose of interpreting "misconduct in office."

The Municipality argues that it is not requiring misconduct to be criminal and is instead drawing an analogy from the definition of official misconduct in order to better understand "misconduct in office." But it is unclear what use this analogy is when it effectively includes a scienter requirement that raises the bar for misconduct in office to be on par with official misconduct. If the legislature wanted to add additional scienter elements to its broad reference to misconduct in office, it could have done so, as it has for findings of misconduct in other circumstances. But the legislature has instead elected not to further constrain the meaning of "misconduct in office" for the purposes of municipal recall petitions.

Significantly, to this court, the definitions in the most current edition of Black's would be far less probative of legislative intent than the definitions contained in the edition in print . . . when AS 29.26.250 was enacted.[44] The [Fourth] Edition of Black's was most current [when the statute was enacted], and it. . . [ ] defined misconduct in office as "[a]ny unlawful behavior by a public officer in relation to the duties of his office, willful in character."[45] . . . . If this definition is

---

[44] *See* ch. 118, § 2, SLA 1972. "When construing statutes de novo, we consider three factors: 'the language of the statute, the legislative history, and the legislative purpose behind the statute.' " *City of Valdez v. State*, 372 P.3d 240, 248 (Alaska 2016) (quoting *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 595 (Alaska 2012)).

[45] *Misconduct in Office*, BLACK'S LAW DICTIONARY (rev. 4th ed. 1968). *See supra* note 2 (noting applicability of Black's Revised Fourth Edition but superior court citation to Fifth Edition was harmless error).

applied in this case, then Zaletel's alleged unlawful behavior of participating in an over-capacity meeting as a public officer, after being warned that the gathering was unlawful, would constitute misconduct in office.

Biggs's arguments are persuasive on this issue. The Clerk's definition of "misconduct in office" was overly reliant on the current definition of "official misconduct" in a way that obviated, rather than captured, the ordinary meaning of AS 29.26.250. Consequently, the "corrupt" requirement does not apply within the meaning of "misconduct in office." And this court agrees with [the superior court in an earlier recall case] that "there is no de minimis exception under Alaska law mandating that an alleged ground for recall must reach a certain threshold of severity to be certified."[46]

But this court also appreciates that Alaska is a "for cause" recall state, and that there must be some sufficient allegation of actual misconduct in order for a petition to go forward.[47] Officials must be able to identify, and potentially avoid, the conduct that would serve as the basis for a recall petition.[48] Zaletel's alleged violation of EO-15 is sufficient to meet that threshold. She allegedly violated EO-15 in her official capacity as an assembly member and actively participated in a meeting that violated an existing emergency order. This is enough for her misconduct to have been "in office" and enough to make a prima facie case.

---

[46] *Midtown Citizens Coal. v. Municipality of Anchorage*, No. 3AN-20-09614 CI at 6 (Alaska Super., Jan. 25, 2021).

[47] *von Stauffenberg v. Comm. for an Honest & Ethical Sch. Bd.*, 903 P.2d 1055, 1059-60 (Alaska 1995); *Meiners v. Bering Strait Sch. Dist.*, 687 P.2d 287, 294 (Alaska 1984).

[48] *See von Stauffenberg*, 903 P.2d at 1059.

This court, in reviewing applications for recall petitions, treats the factual claims as true. And the recall statutes are to be construed liberally. Participating in an assembly meeting, as an assembly member, in knowing violation of municipal law, while obviously defensible, is legally sufficient to support an allegation of misconduct in office for the purposes of a recall petition. The decision must be left up to the voters.

* * * *

## V.    CONCLUSION

Because the superior court correctly found that the Clerk applied an inaccurate definition of "misconduct in office" in determining that Biggs's application was insufficient, which improperly required a showing of "some component of dishonesty, private gain, or improper motive," we AFFIRM the decision of the superior court.