Harold S. ABRAMS et al., Appellants,

v.

STATE of Alaska et al., Appellees,

v.

Lee B. JORDAN, Mayor of the Second Class
Borough in the Eagle River-Chugiak
Area, et al., Appellees.

Lee B. JORDAN, Mayor of the Second Class
Borough in the Eagle River-Chugiak
Area, et al., Cross-Appellants,

v.

Harold S. ABRAMS et al., Cross-Appellees.

Nos. 2407, 2418.

Supreme Court of Alaska.

April 15, 1975.

George A. Dickson & John Hedland, David Engles of Rice, Hoppner, Blair & Hedland, Anchorage, for appellants in 2407.

Gerald L. Sharp, City-Borough Atty., Juneau, amicus curiae for appellants in No. 2407.

William F. Tull, Palmer, amicus curiae on behalf of Mat-Su Borough.

John Ken Norman & Gary Thurlow, Anchorage, amicus curiae on behalf of Greater Anchorage Area Borough.

Charles Cranston & Vernon L. Snow, of Gallagher, Snow & Cranston, Anchorage, for appellees in 2407; Cross-Appellants in 2418.

Peter Argetsinger, Asst. Atty. Gen., Anchorage, Avrum Gross, Atty. Gen., Juneau, for State of Alaska.

## OPINION

Before RABINOWITZ, C. J., CONNOR and BOOCHEVER, JJ., and DIMOND, J. Pro Tem.

CONNOR, Justice.

This appeal and cross-appeal present the question of whether the formation of the Eagle River-Chugiak Borough was validly accomplished under the Alaska Constitution. At the center of the conflict are two constitutional provisions:

"The legislature shall pass no local or special act if a general act can be made applicable. Whether a general act can be made applicable shall be subject to judicial determination. Local acts necessitating appropriations by a political subdivision may not become effective unless approved by a majority of the qualified voters voting thereon in the subdivision affected." Alaska Const., art. II, § 19.

"The entire State shall be divided into boroughs, organized or unorganized. They shall be established in a manner and according to standards provided by law. The standards shall include population, geography, economy, transportation, and other factors. Each borough shall embrace an area and population with common interests to the maximum degree possible. The legislature shall classify boroughs and prescribe their powers and functions. Methods by which boroughs may be organized, incorporated, merged, consolidated, reclassified, or dissolved shall be prescribed by law." Alaska Const., art. X, § 3.

Appellants assert that the prohibition against local or special acts renders invalid Ch. 145 SLA 1974 by which the Eagle River-Chugiak Borough was organized. They argue that the legislature created a borough by a local or special law when a general law could have been made applicable, and that the "general law" constitutional provision controls the operation of legislative power under art. X, § 3, of the Alaska Constitution. They conclude, therefore, that Ch. 145 SLA 1974 is unconstitutional and that the borough created by the legislature is invalid.

Appellees support the validity of the borough by arguing that the legislative act was not local or special legislation, that even if it was local or special legislation the constitutional prohibition does not apply because a general law cannot be made applicable to the particular subject matter of the legislative act, and that the legislature possesses independent power under art. X, § 3, of the Alaska Constitution, apart from the provisions of art. II, § 19, to create the Eagle River-Chugiak Borough.

### I.

The Eagle River-Chugiak area extends from the northeast limits of the City of Anchorage to the Knik River Bridge, and comprises about 738 square miles, slightly less than one-half of the total area of the Greater Anchorage Area Borough as it previously existed. It is located wholly within what was the Greater Anchorage

Area Borough. The area has a population of about 8,500 persons, about 2,500 of whom live in what is regarded as the community of Eagle River. There are no cit- Eagle River lies about 3.7 miles from the ies of any statutory class within the area. corporate limits of the City of Anchorage and about 13 miles from downtown Anchorage. The area is largely residential in land use and most of its work force is employed within what has been the Greater Anchorage Area Borough.

In 1974 the legislature passed Ch. 145 SLA 1974, which became law without the governor's approval. The act provided for an election concurrent with the next statewide election following its passage, to be conducted solely within the Eagle River-Chugiak area, on the question of whether the area should be incorporated as a second class borough. If a majority voted "no" in the first election, the act provided for a subsequent election in which the voters would decide whether the area should be incorporated as a second class city. The election on borough incorporation took place on August 27, 1974, and the proposition passed by a vote of 1,233 to 979. Under the terms of the act, the area then became incorporated.

The act required the Local Boundary Commission to hold a public hearing before the election, and to review the boundaries set forth in the act after the election. Additionally, the Commission was required to promulgate a plan of apportionment, after which the Lieutenant Governor was required to, and did, on December 3, 1974, conduct an election for municipal officers.[1]

Prior to the enactment of Ch. 145 SLA 1974 there existed, and still exists, a comprehensive statutory system for the incorporation of boroughs, including those to be established within the boundaries of boroughs already in existence.[2] The general law scheme for organizing a borough consists of a petition to the Department of Community and Regional Affairs, a review of that petition for form by the Department, public hearings by the Local Boundary Commission, and a decision by the Commission as to whether the standards set out in the statutes have been met. In the event of favorable Commission action, an election can be held within the area proposed for incorporation. When a new borough is to be created within an existing one, both a new incorporation and a change in existing boundaries must occur, and the action must be approved at an election within the new borough. The action may also be conditioned upon electoral approval within the existing borough, and it must be submitted to the legislature.

Appellants brought an action on October 30, 1974, seeking to have Ch. 145 SLA 1974 declared unconstitutional and void and seeking to have enforcement of that statute enjoined. On November 22, 1974, appellants sought a preliminary injunction against conducting the election for municipal officers which was scheduled for December 3, 1974. On November 27, 1974, the superior court entered a temporary restraining order which allowed the election to proceed but prohibited certification of the results pending a further hearing. That further hearing was held on Decem-

---

I. Other transitional steps include a determination by the Local Boundary Commission, subject to judicial review, of the allocation of debts and assets between the new borough and the Greater Anchorage Area Borough, and written notice by the new borough of its intention to assume its powers. These steps have not been taken, but the act requires that the new borough assume its powers no later than the end of the current fiscal year, i. e., June 30, 1975. In the meantime the Greater Anchorage Area Borough must continue to assess and collect taxes in the new borough until that date, and allocate to the new borough an amount to be determined by the Local Boundary Commission, subject to judicial review. Under the act the Greater Anchorage Area Borough has been prohibited from transferring assets or authorizing bonded indebtedness in the new borough since September 12, 1974.

2. *See* AS 29.18.030 et seq.

ber 20, 1974. On December 20. 1974. oral argument was presented to the superior court, and that court entered a declaratory judgment to the effect that Ch. 145 SLA 1974 was local and special legislation, but was not violative of art. II, § 19, of the Alaska Constitution. Appellants filed this appeal on December 23, 1974, and were granted a stay pending the decision of the appeal. This court also entered an order expediting the appeal because the questions presented obviously should be decided promptly for the benefit of the affected governmental entities and the public.

## II.

■ The first question is whether Ch. 145 SLA 1974 is a local or special act. Our previous opinions in Boucher v. Engstrom, 528 P.2d 456 (Alaska 1974), and Walters v. Cease, 394 P.2d 670 (Alaska 1964), provide background for the resolution of this question. In Walters v. Cease, we held that the Mandatory Borough Act, Ch. 52 SLA 1963, was local and special legislation, and that it could not constitutionally be submitted to the voters for adoption by referendum.[3] In Boucher v. Engstrom, we held that an initiative to relocate the state capital did not amount to special or local legislation, and thus could be placed upon the ballot. We observed that legislation does not become "local" merely because it operates only on a limited number of geographical areas rather than on a statewide geographical basis. A legislative act may affect only one of a few areas and yet relate to a matter of statewide concern or common interest. Boucher v. Engstrom, *supra,* 528 P.2d at 461–62.

■ Boucher v. Engstrom does represent a retrenchment on the definition of

"local" found in Walters v. Cease. But the ultimate question is whether a legislative act, attacked as "local" or "special", is reasonably related to a matter of common interest to the whole state.[4]

■ In the case at bar it appears that Ch. 145 SLA 1974 is both special and local legislation. The act provides a method of creating a new borough which is peculiar to the locality where it is applicable. The subject matter can hardly be said to be of statewide interest or impact.

Specifically, the operation and scope of the act are limited to the Greater Anchorage Area Borough. The act creates law which affects only the governmental structure of the Greater Anchorage Area Borough and the Eagle River-Chugiak area lying within it. It can have no effect upon any other part of the state. It purports to create a new local government, and does so without regard to the general statutory provisions that prescribe the method that otherwise governs the creation of new local governmental entities from existing ones. In our opinion the legislation is clearly special and local in nature.

## III.

■ This brings us to the next question. Appellees argue that even if Ch. 145 SLA 1974 is a local or special act, it is permissible legislation. The Alaska Constitution forbids local or special acts only "if a general act can be made applicable." Whether a general act can be made applicable is subject to judicial determination. We find AS 29.18.030 et seq. to be an applicable general law.

Appellees argue that the Eagle River-Chugiak area is unique and that this justifies the special treatment given to it by the legislature. The trial court found that the

---

3. Alaska Constitution, art. XI, § 7, provides: "The initiative shall not be used to dedicate revenues, make or repeal appropriations, create courts, define the jurisdiction of courts or prescribe their rules, or enact local or special legislation. The referendum shall not be applied to dedications

of revenue, to appropriations, to local or special legislation, or to laws necessary for the immediate preservation of the public peace, health, or safety."

4. Boucher v. Engstrom, 528 P.2d 456, 463 (Alaska 1974).

Eagle River area has a separate identity, that it has been a distinct community in the Anchorage bowl, and that it is the only large "exurban" community in Alaska. Appellees point out additionally that the area is separated from the rest of the Greater Anchorage Area Borough by the Chugach Mountains, the Chugach State Park, and by military reservations. A majority of the electorate of the area has voted against a unified Greater Anchorage Area Borough and against extension of areawide power by the borough over the area.

We do not find this justification persuasive. Numerous other localities within organized boroughs can also claim to be unique in certain respects. Examples come readily to mind.

Douglas, with a 1970 population of 1,243, located on an island across from the state capital, can claim to be distinct, providing a largely residential community for persons working in the capital city. Historically Douglas was a city proudly separate from Juneau. Similarly, it could be claimed that College, with a 1970 population of 3,434, is the only community surrounding the central state university. Nearly every neighborhood or locality within an existing borough can assert some peculiarity or characteristic which distinguishes it from the rest of the borough. If this is all that is needed to justify a departure from general law, then the legislature could, by special act, create many new boroughs out of old ones on an ad hoc basis. We do not think this is what the framers of our constitution intended.[5]

We find nothing in the nature of the Eagle River-Chugiak area which justifies a departure from the general law scheme of incorporating a new borough. Those unusual aspects which appellees have ascribed to the area present no insurmountable barriers to creating a new borough by following the procedures set forth in AS 29.18.-030 et seq. Therefore, we hold that Ch. 145 SLA 1974 contravenes the provisions of art. II. § 19, of the Alaska Constitution.

IV.

Finally, appellees urge that under Art. X, § 3, of the Alaska Constitution the legislature is given broad power over the methods by which boroughs may be organized, incorporated, or dissolved. From this, it is argued, the legislature derives power to enact such laws as Ch. 145 SLA 1974 despite the prohibition of art. II, § 19, of the Alaska Constitution.

But Art. II, § 19, governs the exercise of all legislative powers expressly granted by other portions of the constitution. There is no intimation in its language or in the articles concerning local government which would create an exception to this prohibition against local or special laws.

It is an undisputed maxim of constitutional construction that different provisions of the document shall be read so as to avoid conflict whenever possible. Thus, "[w]henever possible, all provisions should be given effect, and each interpreted in light of the others, so as to reconcile them, if possible, and to render none nugatory." Lemon v. Bossier Parish School Board, 240 F.Supp. 743, 744 (W.D.La.1965).[6] We have carefully read the debates and discussions during Alaska's constitutional convention as they relate to the import of art.

5. *Accord*, State v. Hodgson, 183 Kan. 272, 326 P.2d 752, 762 (1958); *see also* Albuquerque Met. Arroyo Flood Control Authority v. Swinburne, 74 N.M. 487, 394 P.2d 998 (1964).

6. *Accord*, People v. Western Air Lines, 42 Cal.2d 621, 268 P.2d 723, 732 (1954), appeal dismissed, 348 U.S. 859, 75 S.Ct. 87, 99 L.Ed. 677; Cooper Motors v. Board of County Commissioners, 131 Colo. 78, 279 P.2d 685, 688 (1955); Latting v. Cordell, 197 Okl. 369, 172 P.2d 397, 399 (1946).

II, § 19, and art. X.[7] We find nothing in these discussions which would indicate that art. X, § 3, was intended to operate as an exception to the "general law" rule of art. II, § 19. Indeed, if every grant of power were read as an exception to the "general law" provision, that provision would be rendered wholly nugatory in its effect.

We conclude that nothing in the local government articles of the Alaska Constitution overrides the prohibition of art. II, § 19.

Having found the questioned act invalid, we. reverse the judgment below and remand for the entry of a judgment in favor of appellants.

7. *See* Const.Conv.Min. pp. 1760–70, 1774, 1824–27, 2768–71 (Jan. 10–25, 1956).