Lee JORDAN et al., Appellants,

v.

Frank REED, Sr., et al., Appellees.

No. 2586.

Supreme Court of Alaska.

Dec. 22, 1975.

Vincent Vitale, Anchorage, for appellants.

Richard W. Garnett, II, Anchorage, for appellees.

1. The matter then came before us on a petition for review, and after consideration of the petition and opposition thereto, on August 11, 1975, review was granted and an order entered affirming the superior court's entry of summary judgment in this case. In this same order we indicated that an opinion would follow. Thus, this opinion is filed in conformity with our previous order in the instant case.

OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER, and BURKE, JJ.

RABINOWITZ, Chief Justice.

Appellants, residents of the Eagle River-Chugiak Borough, were unsuccessful plaintiffs in a class action brought in the superior court seeking declaratory and injunctive relief against the Anchorage Charter Commission. The superior court expeditiously processed the case and granted summary judgment in favor of appellees "dismissing the complaint, denying injunctive relief, and declaring the Anchorage Charter Commission, as presently constituted, a valid public body authorized to proceed with its statutory functions under AS 29.68.240 et seq." We affirm.[1]

The controlling facts involved in the case at bar were stipulated to by counsel and essentially are as follows: During the 1974 legislative session, the Legislature passed Chapter 145, which act authorized the residents of the Eagle River-Chugiak area to vote on the question of whether or not to form a second class borough.[2] Pursuant to this legislation, an election was held on August 27, 1974, at which time the area residents approved formation of a second class borough, and on September 12, 1974, the Eagle River-Chugiak Borough was officially incorporated.

Subsequently, on April 15, 1975, this court held in *Abrams v. State*, 534 P.2d 91 (Alaska 1975), that Chapter 145 SLA 1974 was unconstitutional because it violated Article II, Section 19 of the Alaska Constitution.[3] Our decision in *Abrams* resulted in an "automatic reincorporation" of

2. Prior to the enactment of this legislation, the area was part of the Greater Anchorage Area Borough.

3. Article II, § 19 of the Alaska Constitution states:

The legislature shall pass no local or special act if a general act can be made applicable. Whether a general act can be made applicable shall be subject to judicial

the Eagle River-Chugiak area into the Greater Anchorage Area Borough. Between the August 1974 election and this court's decision in *Abrams,* the Greater Anchorage Area Borough proceeded about its governmental business: a school board was elected; bonds totalling approximately $8,000,000 were authorized;[4] Borough Assembly members were elected; and a Charter was approved and Charter Commission members elected. Meanwhile, the Eagle River-Chugiak Borough received monies from the State of Alaska, hired professional and staff personnel, and passed ordinances.

The crux of appellants' complaint in the superior court, and before this court on appeal, is that they have been unconstitutionally denied the right to vote in the February 11, 1975, election which was held in the Greater Anchorage Area Borough. At that time the creation of a Charter

Commission was approved, and its members elected. Appellants grounded their infringement of the right to vote contentions upon asserted violations of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Sections 1, 2, and 7 of the Alaska Constitution, and AS 29.68.310.[5]

■ Before discussing the merits, we consider it necessary to allude to a procedural problem this case raises. Although this matter came before us on a petition for review, we are of the view that the case is properly an appeal. Petitions for review are governed by Rules 23 and 24 of Rules of Appellate Procedure of the State of Alaska. Rule 23 provides that "[a]n aggrieved party . . . may petition this court as set forth in Rule 24 to be permitted to review any order or decision of the superior court, not otherwise appeala-

---

determination. Local acts necessitating appropriations by a political subdivision may not become effective unless approved by a majority of the qualified voters voting thereon in the subdivision affected.

In *Abrams,* we noted that

[t]he Eagle River-Chugiak area extends from the northeast limits of the City of Anchorage to the Knik River Bridge, and comprises about 738 square miles, slightly less than one-half of the total area of the Greater Anchorage Area Borough as it previously existed. It is located wholly within what was the Greater Anchorage Area Borough. The area has a population of about 8,500 persons, about 2,500 of whom live in what is regarded as the community of Eagle River.

534 P.2d at 92–93.

4. On July 16, 1975, by separate order in the *Abrams* case, we declared in part that these bonds were "valid notwithstanding the opinions of the court regarding the invalidity of Chapter 145, SLA 1974, and will, when issued, be general obligations of the Greater Anchorage Area Borough including the area consisting of the Eagle River-Chugiak Borough." Our validation of the bonds in question was based upon the authority of *City of Phoenix v. Kolodeziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970).

5. Article I, Sections 1, 2, and 7 read respectively:

Section 1. *Inherent Rights.* This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

Section 2. *Source of Government.* All political power is inherent in the people. All government originates with the people, is founded upon their will only, and is instituted solely for the good of the people as a whole.

Section 7. *Due Process.* No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

AS 29.68.310 reads:

*Composition of charter commission.* The charter commission members shall be qualified voters and shall consist of 11 members, three of whom shall be residents elected at large from the area of the borough and eight of whom shall be (1) residents of and elected from the area outside cities in the borough or (2) residents of and elected from a city or cities in the borough. The number representing each of these areas shall be proportionate to the respective populations . . . ..

ble under Rule 5 . . . ." Thus, the two routes to this court are mutually exclusive. Appellate Rule 5 reads in part:

*Judgments From Which Appeal May Be Taken.*

An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof in any action or proceeding . . . .

Since the superior court granted summary judgment in favor of appellees and dismissed the complaint, the judgment is final. All relief requested of the superior court has been denied. Therefore, the proper vehicle by which to bring the merits of the case to this court is by appeal. Under our supervisory powers, we treat the matter before us as an appeal.

In granting summary judgment to appellees, the superior court concluded that the Anchorage Charter Commission was properly elected on February 11, 1975, by the voters then qualified to vote in the Greater Anchorage Area Borough. In reaching this conclusion, the superior court held that the validity of the election was unaffected by our decision in *Abrams* and that the "[r]esidents of the former Eagle River-Chugiak Borough were not denied any rights under the United States Constitution or the laws or Constitution of the State of Alaska, by reason of their non-participation in the election of February 11, 1975." [6]

We agree with the superior court that our decision in *Abrams* did not affect the validity of the February 11, 1975, Charter Commission election which was held within the Greater Anchorage Area Borough. We must reject appellants' contention that by virtue of *Abrams*, the separate status of the Eagle River-Chugiak Borough was voided *ab initio*. Our holding in *Abrams* was limited to a declaration that Chapter 145, SLA 1974, is unconstitutional in that it violates the prohibition against local or special legislation found in Article II, Section 19 of Alaska's constitution.

Insofar as Chapter 145, SLA 1974, was enacted by the legislature, and an election held pursuant to its terms on August 27, 1974, which resulted in the formation on September 12, 1974, of the Eagle River-Chugiak Borough and its separation from the Greater Anchorage Area Borough, the separate status of the Eagle River-Chugiak Borough had apparent legal validity. Governmental actions based upon the apparent legality of the Eagle River-Chugiak Borough, such as decisions as to what geographical areas are within the Greater Anchorage Area Borough for purposes of elections, should not be voided if carried out in good faith.[7] This view is

6. In this appeal appellants advance three lines of argument in support of their contention that the superior court erroneously granted summary judgment. Appellants first argue that the superior court "erred in holding that the Chugiak-Eagle River Borough area was, in effect, annexed to the Greater Anchorage Area Borough on April 15, 1975, and that, therefore, Chugiak-Eagle River residents were not entitled to vote in the initial Charter Commission Election." They next assert that the trial court erred in "refusing to hold that the State and the Greater Anchorage Area Borough must show a compelling state interest before they can deny or diminish petitioners statutory or constitutional right to vote." Appellants' third assertion of error rests on the superior court's refusal to find that the Charter Commission did not meet the requirements of AS 29.68.310.

7. Concerning the good faith issue, Judge Moody in his oral decision made the following pertinent observations:

But both counsel in argument conceded that both the Chugiak/Eagle River area acted in good faith [sic] under existing statute passed by the Legislature to disengage and establish their own Borough. They also concede there was no invidious or arbitrary action on the part of the Borough of Anchorage or State officials or any other governmental agency in setting up the Charter Commission and setting up for vote, and that they were merely carrying out their ordinary duties during the course of governing the area.

But considering this as a whole, it appears to me this is a clear case of—of the plaintiffs in this case doing—acting under a Statute which they thought was valid and

reflective of the basis upon which the de facto municipal incorporation doctrine was developed by the courts of this country during the 19th century. In *Port Valdez Co. v. City of Valdez,* 522 P.2d 1147, 1152–53 (Alaska 1974) (footnote omitted), this court quoted with approval the following summary of that principle:

> Briefly stated, the doctrine is that where there is authority in law for a municipal corporation, the organization of the people of a given territory as such a corporation under color of delegated authority, followed by a user in good faith of the governmental powers incidental thereto, will be recognized by the law as a municipal corporation de facto, wherever through the failure to comply with the constitutional or statutory requirements the corporation cannot be said to exist de jure.[8]

In the case at bar, it was demonstrated that the Eagle River-Chugiak Borough was organized, in September of 1974, pursuant to the authority of Chapter 145, SLA 1974. Both the residents of the Eagle River-Chugiak area and the residents of the Greater Anchorage Area Borough

patterned their actions on the assumption that two separate political entities were then in existence. It is apparent that determination of the relevant electorate for purposes of the Charter Commission election was also governed by the assumption that the 4,108 registered voters within the Eagle River-Chugiak Borough were not then qualified to vote in the Greater Anchorage Area Borough Charter Commission election. Although our April 1975 decision in *Abrams* voided the separation of the Eagle River-Chugiak area from the Greater Anchorage Area Borough, it did not declare invalid actions taken in good faith pursuant to the seemingly separate legal status of the two political subdivisions.[9] Any other decision would create a basis for challenges to every act carried out under the authority of the Greater Anchorage Area Borough which was based on the premise that the Eagle River-Chugiak area had attained a separate and independent legal status.[10]

We turn next to appellants' contention that they were unconstitutionally denied the right to vote in the February 11, 1975, Charter Commission election. In

good faith. It turned out that the Supreme Court said it wasn't, but by the same token, the Borough was doing in good faith what the law said it could do.

8. In *Port Valdez* we were quoting Tooke, *DeFacto Municipal Corporations Under Unconstitutional Statutes,* 37 Yale L.J. 935, at 935 (1928).

9. We think it can be reasonably concluded that the Eagle River-Chugiak Borough attained de facto status. In this regard, we believe the four-part test of *Port Valdez Co. v. City of Valdez,* 522 P.2d 1147, 1154 (Alaska 1974), was met. More particularly, there was legal provision for the creation of the borough; a good faith attempt at compliance with Chapter 145, SLA 1974; a "colorable compliance" with Chapter 145, SLA 1974; and assumption, in good faith, by the Eagle River-Chugiak Borough officials of the powers of their respective offices.

The superior court found in part that "[d]uring the period from September 12, 1974, through April 15, 1975, the Eagle River-Chugiak Borough received $25,000 as

an organization grant from the State of Alaska and certain additional funds from the Greater Anchorage Area Borough. The funds were expended in the course of borough operations. The borough hired professional and staff personnel and passed ordinances.

Additionally, review of the record leads to a similar conclusion regarding the status of the Charter Commission itself. For, in our view, the Charter Commission should at a minimum be accorded de facto status since the circumstances surrounding its creation clearly meet the four-part test of *Port Valdez.*

10. Nor are we persuaded by appellants' statutory argument that under the terms of AS 29.68.310 the Charter Commission is invalidly constituted (*see* note 5, *supra*). Since we have held that the area encompassed within the former Eagle River-Chugiak Borough had a separate status under the de facto municipal incorporation doctrine, the composition of the Charter Commission need not reflect a group of citizens not part of the Greater Anchorage Area Borough at the time the Charter Commission was formed.

our view, the flaw in appellants' position is that the denial of the right to vote, standing by itself, is not a sufficient condition for judicial relief. Admittedly, the right to vote is a fundamental right and its denial ought to be strictly scrutinized by the courts.[11] But we have rejected the automatic application of the rigid two-tier formulation of the equal protection doctrine, requiring demonstration of compelling state interests whenever a litigant demonstrates that "fundamental rights" are infringed or "suspect categories" exist.[12] In the extreme case, where both fundamental rights are infringed *and* the infringement is the result of a suspect classification, we might more readily require demonstration of a compelling state interest implemented by a means which ". . . bear[s] a substantial relationship to the legislative purpose."[13] But this is not such a case; insofar as the right to vote in the Charter Commission election can be viewed as having been denied residents of the then existing Eagle River-Chugiak Borough, such denial was based solely upon consideration of geographical location within this newly created political subdivision. To view this geographical classification as suspect would be irrational. At the time the classification was made, rather than being "suspect," it was compelled because the Eagle River-Chugiak Borough was not part of the Greater Anchorage Area Borough. To hold otherwise would be tantamount to holding that residents of the Fairbanks North Star Borough who are denied the right to vote in Anchorage area elections are entitled to judicial relief.

We have previously held that political subdivisions have a compelling state interest in stability in public affairs which may be implemented by residency requirements for candidates for public office.[14] We see no reason why that decision ought not, by analogy, extend as far as acknowledging a compelling state interest in having an electorate reside in the governed area. When denial of the right to vote, based on apparently valid laws which do not create suspect classification, is weighed against the compelling state interest of stability in public affairs, and the denial bears a direct and substantial relation to the state interest, the balance weighs in favor of upholding the challenged election.

Appellants' due process contentions must also fail. Appellants stipulated that no resident of the Eagle River-Chugiak area asserted the right to vote in the election now challenged here.[15] No person challenged their lack of eligibility at a point in time when defects, if they existed in the Charter Commission election process, could have been cured. Absent any refusal of the right to vote in an election which was in fact, at the time, in a political entity separate and distinct from the Eagle River-Chugiak area, we must decline to find any denial of due process.

One final point warrants discussion. Appellants argue that to deny them the right to vote on the question of who sits on the Charter Commission is a denial of fundamental fairness. They assert that to uphold the superior court's judgment would, in essence, thrust upon them a government they had no part in selecting. Appellees, on the other hand, argue that the realignment of political boundaries which occurred as a result of the *Abrams* decision is functionally equivalent to an annexation. We find this argument, and the case authority cited in support, persuasive. The general rule regarding annexation is summarized in 2 Mc-

11. *See, e. g., Kramer v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed. 583 (1969).

12. *See Ravin v. State*, 537 P.2d 494, 498 (Alaska 1975); *Lynden Transport, Inc. v. State*, 532 P.2d 700 (Alaska 1975).

13. *Ravin v. State*, 537 P.2d 494, 498 (Alaska 1975).

14. *Gilbert v. State*, 526 P.2d 1131, 1132–34 (Alaska 1974); *cf. Duncan v. Town of Blacksburg*, 364 F.Supp. 643, 647 (W.D. Va.1973).

15. The superior court found in part: "[r]esidents of the Eagle River-Chugiak area did not vote or assert the right to vote in the February 11, 1974, election."

Quillin, *Municipal Corporations,* § 7.10 at 857 (3d ed. 1966), where it is stated:

> When territory has been lawfully and finally annexed, the new area becomes, *ipso facto,* a part of the municipality subject to municipal jurisdiction and it may be governed as the original municipal territory was governed prior to the change. . . . (footnotes omitted)

In annexation cases it can also be argued that it is unfair to place individuals under the authority, and the existing obligations, of a political entity they had no part in fashioning. Yet, to do otherwise could, in our view, create an intolerable burden upon the annexing entity. A case of some relevance to this issue is *Barnes v. Kansas City,* 359 Mo. 519, 222 S.W.2d 756, 758 (1949). There voters within the municipality had approved a bond issue. At that time appellants lived in an area which had been annexed to Kansas City by charter amendment; but because the amendment had not taken effect, appellants were denied the right to vote on the bond issue. Appellants then asked the court to enjoin the sale of bonds on the grounds that their rights of due process and suffrage under the Federal and Kansas Constitutions had been abridged. The Kansas court ruled in part:

> We hold that they were not qualified electors of Kansas City at the time of the bond election, so were not authorized to vote on the bond issue, and the validity of the bond issue was not thereby affected.[16]

Since a lawful Charter Commission election occurred while appellants were not residents of the Greater Anchorage Area Borough, the Charter Commission and the relevant unification ordinance became applicable to these citizens at the time our decision in *Abrams* was rendered.[17]

The decision of the superior court granting summary judgment in favor of appellees, dismissing appellants' complaint, denying injunctive relief, and declaring the Anchorage Charter Commission, as presently constituted, a valid public body authorized to proceed with its statutory functions under AS 29.68.240 et seq., is affirmed.

---

16. *See also Bridges v. City of Biloxi,* 253 Miss. 812, 178 So.2d 683 (1965); *State v. City of Harlingen,* 324 S.W.2d 248 (Tex.Civ. App.1959); *Linke v. Board of County Commissioners of Grand County,* 129 Colo. 165, 268 P.2d 416 (1954).

17. Appellees make the point in their brief that "Not only will [residents of the former Eagle River-Chugiak Borough] vote in future local elections, whether or not the Charter passes, they will also vote on the charter itself . . . and they will vote on offices under the Charter if it passes."

Similarly, Judge Moody, in his oral decision, noted in part that " . . . as soon as the plaintiffs area has come back in they have to provide for their carrying on—their participation in government in the same manner as they do with any other citizen and there is no showing here they have not done—the Borough has not done that in this case, or . . . the Charter Commission . . . "