*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JAMES PRICE, ) | |
| ) | Supreme Court No. S-14713 |
| Appellant, ) | |
| ) | Superior Court No. 3KN-11-00404 CI |
| v. ) | |
| ) | O P I N I O N |
| KENAI PENINSULA BOROUGH and ) | |
| JOHNI BLANKENSHIP, CLERK, ) | No. 6934 – August 8, 2014 |
| ) | |
| Appellees. ) | |
| _____ ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Charles T. Huguelet, Judge.

Appearances: Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellant. Colette G. Thompson and Holly B. Montague, Soldotna, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.     INTRODUCTION

James Price challenges the superior court's order affirming the Kenai Peninsula Borough ("Borough") Clerk's rejection of his ballot referendum application. The proposed referendum would repeal Borough Ordinance 2008-28, which authorizes the general law cities within the Borough to tax nonprepared food items on a year-round basis. The Borough Clerk and the superior court rejected the application on the ground

that it violated AS 29.26.100's prohibition on local or special legislation. We conclude that the referendum does not violate the prohibition on local or special legislation and would be enforceable if passed. Accordingly, we reverse.

## II.    FACTS AND PROCEEDINGS

The Kenai Peninsula Borough imposes a consumer sales tax on all retail sales, rents, and services made or rendered within the Borough.[1] In the 2008 regular election, Borough voters approved an initiative providing for a nine-month exemption from the Borough sales tax on nonprepared food items.[2] In anticipation of this initiative, the Borough Assembly adopted Ordinance 2008-28, which allows general law cities in the Borough to continue taxing nonprepared food items on a year-round basis.

There are six cities within the Borough: Kachemak, Homer, Soldotna, and Seldovia, which are general law cities, and Kenai and Seward, which are home rule cities.[3] Alaska Statute 29.45.700(a) provides that a general law city in a borough may only levy and collect sales taxes "in the manner provided for boroughs" unless the borough assembly "by ordinance authorize[s] a city to levy and collect sales and use taxes on other sources." Home rule cities are not subject to this provision.[4] Kachemak

---

[1]    Kenai Peninsula Borough Code (KPB) 05.18.100.

[2]    KPB 05.18.200(A)(15)(d).

[3]    A general law city has legislative powers conferred by law, whereas a home rule city has all legislative powers not prohibited by law or charter. AS 29.04.020; AS 29.04.010.

[4]    *See* AS 29.04.010.

-2-                                                                                6934

does not currently impose a sales tax.[5]  Thus, only Homer, Soldotna, and Seldovia are presently affected by Ordinance 2008-28.[6]

On May 3, 2010, Price filed an application for a referendum petition with the Borough Clerk entitled "Referendum to Repeal Kenai Peninsula Borough Ordinance 2008-28."  The proposed referendum, which was assigned number 2010-01 by the Clerk's Office (hereinafter "Referendum 2010-01"), would "end[] the Borough's authorization for the cities of Soldotna, Homer, and Seldovia to collect sales tax for nonprepared food items."

On May 14, 2010, the Borough Clerk rejected Price's application on two grounds: (1) the proposed referendum constituted local or special legislation in violation of AS 29.26.100 because it would allow all Borough voters to vote on an issue that only concerns Homer, Soldotna, and Seldovia; and (2) the proposed referendum was unenforceable as a matter of law because it circumvented AS 29.45.700(a), which provides that only the "assembly" may authorize a city to tax sources that the Borough does not.

Price filed suit against the Borough in superior court and sought an injunction requiring the Clerk to prepare the referendum petition so that signatures could be gathered for placement on the 2011 Borough municipal ballot.  Both parties moved for summary judgment.  The superior court granted the Borough's motion, concluding

---

[5]	We recognize that someday, should it elect to impose a sales tax, the general law city of Kachemak could be directly affected by Ordinance 2008-28.  But on the facts before us, Kachemak is not directly affected by the ordinance and would not be affected by the proposed referendum.

[6]	Each of these cities imposes a sales tax on certain items. *See* Homer City Code (HCC) 09.16.010; Soldotna Municipal Code (SMC) 03.08.010; Seldovia City Code (SCC) 03.08.010.  Homer provides its own seasonal exemption for sales of nonprepared food items from September through May.  HCC 09.16.100.

that the referendum constituted local or special legislation in violation of AS 29.26.100. In light of this ruling, the superior court did not address whether the application was also unenforceable as a matter of law.  Price appeals.

## III.  STANDARD OF REVIEW

"We review grants of summary judgment de novo, exercising our independent judgment to determine whether the parties genuinely dispute any material facts and, if not, whether the undisputed facts entitle the moving party to judgment as a matter of law."[7]  We generally do not review an initiative or referendum unless and until it is approved by the voters.[8]  However, exceptions to this rule exist where the proposed legislation is challenged on the basis that it does not comply with the constitutional and statutory provisions regulating initiatives and referendums, or where it is challenged as clearly unconstitutional or unlawful.[9]  Whether a ballot initiative or referendum complies with constitutional and statutory requirements is a question of law, which we review using our independent judgment, "adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[10]  "In matters of initiative and referendum, we

---

**7**     *Kodiak Island Borough v. Mahoney*, 71 P.3d 896, 897 (Alaska 2003) (quoting *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.*, 28 P.3d 904, 908 (Alaska 2001)) (internal quotation marks omitted).

**8**     *Alaskans for Efficient Gov't, Inc. v. State*, 153 P.3d 296, 298 (Alaska 2007).

**9**     *Carmony v. McKechnie*, 217 P.3d 818, 819-20 (Alaska 2009) (citing *Alaskans for Efficient Gov't, Inc.*, 153 P.3d at 298). Because Referendum 2010-01 was rejected by the Borough Clerk on the grounds that (1) it was unlawful local or special legislation and (2) that it would impermissibly conflict with power granted exclusively to the Borough Assembly, its lawfulness and compliance with statutory provisions regulating initiatives and referendums has been challenged.

**10**     *Anchorage Citizens for Taxi Reform v. Municipality of Anchorage*, 151 P.3d 418, 422 (Alaska 2006) (citing *Pullen v. Ulmer*, 923 P.2d 54, 58 (Alaska 1996)).

have previously recognized that the people are exercising a power reserved to them by the constitution and the laws of the state, and that the constitutional and statutory provisions under which they proceed should be liberally construed."[11]

## IV.   DISCUSSION

### A.   Referendum 2010-01 Does Not Violate AS 29.26.100's Prohibition On Local Or Special Legislation.

Article XI, section 1 of the Alaska Constitution grants to the people the power to enact or change state laws through initiatives and referendums, and AS 29.26.100 reserves to the residents of municipalities the power to use initiatives and referendums to enact or change municipal ordinances.[12] The constitution restricts the initiative and referendum powers by providing that "[t]he initiative shall not be used to . . . enact local or special legislation" and "[t]he referendum shall not be applied . . . to local or special legislation."[13] Alaska Statute 29.26.100 extends these restrictions to municipal initiatives and referendums.

Both the Borough Clerk and the superior court rejected Price's referendum application because they concluded that the proposed referendum constituted local or

---

[11]   *Municipality of Anchorage v. Frohne*, 568 P.2d 3, 8 (Alaska 1977) (footnotes omitted) (citing Alaska Const. art. XI, § 1; *Boucher v. Engstrom*, 528 P.2d 456, 462 (Alaska 1974)); *see also Kodiak Island Borough v. Mahoney*, 71 P.3d 896, 898 (Alaska 2003) ("We liberally construe constitutional and statutory provisions that apply to the initiative process." (citing *Brooks v. Wright*, 971 P.2d 1025, 1027 (Alaska 1999); *Interior Taxpayers Ass'n v. Fairbanks N. Star Borough*, 742 P.2d 781, 782 (Alaska 1987))).

[12]   The parties and the superior court used the plural "referendums" and we do likewise. The plural of "referendum" can either be "referenda" or "referendums." BRIAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 762 (3d ed. 2011) (noting that "the English plural -*dums* seems to be on the rise").

[13]   Alaska Const. art. XI, § 7.

special legislation. But, while an initiative is unconstitutional if it enacts local or special legislation, a referendum is unconstitutional only if it would approve or reject local or special legislation.[14] We must, therefore, consider whether Ordinance 2008-28 is local or special legislation.

We have established a "two-stage analysis for determining whether . . . legislation is 'local or special legislation.' "[15] The first stage requires us to determine whether the legislation is of general — in this case boroughwide — applicability.[16] If the legislation is generally applicable it is not local or special legislation, and no further inquiry is required.[17] If the legislation is not generally applicable, we proceed to the second stage and ask whether the legislation "bears a 'fair and substantial relationship' to legitimate purposes."[18]

Price argues that Referendum 2010-01 meets the first part of the two-part "local or special legislation" test because "the effects of the referendum . . . are borough-wide, and do not affect only certain area[s] of the Borough."

In rejecting the application for the referendum petition, the Borough Clerk concluded that Referendum 2010-01 lacked boroughwide applicability because the law

---

[14]     *Id.*; *see also Walters v. Cease*, 394 P.2d 670, 671 (Alaska 1964) (holding that Secretary of State could not refer an act of the legislature for referendum by the voters because the *act* was local or special legislation), *abrogated on other grounds by Boucher v. Engstrom*, 528 P.2d 456 (Alaska 1974).

[15]     *Pebble Ltd. P'ship ex rel. Pebble Mines Corp. v. Parnell*, 215 P.3d 1064, 1078 (Alaska 2009) (citing *Boucher*, 528 P.2d at 461).

[16]     *Id.* (citing *Boucher*, 528 P.2d at 461).

[17]     *Id.*

[18]     *Id.* at 1079 (quoting *State v. Lewis*, 559 P.2d 630, 643 (Alaska 1977)) (internal quotation marks omitted).

would impact the taxation schemes of only three of the Borough's six cities. The clerk reasoned:

> [T]he voters outside the cit[ies], which far outnumber the voters within the three general law cities, would be allowed to vote on an issue that only concerns the three general law cities. The voters outside [the] cities who shop and pay sales tax within the cities may be quite motivated to vote in favor of repealing a city source of taxation since the programs and functions supported by that taxation are city functions and programs, not areawide functions and programs. Since the law will only impact the taxation scheme within the three cities, which is not a boroughwide concern, it does not have boroughwide applicability.

The superior court similarly concluded that the proposed referendum lacked general, boroughwide applicability because "although anyone shopping for groceries in Soldotna, Homer, or Seldovia would receive a benefit from the proposed referendum, the substance and stated purpose of the referendum is to take the power to tax groceries away from the residents of Soldotna, Homer, and Seldovia and subject it to a boroughwide vote."

The parties, the Borough Clerk, and the superior court incorrectly focused their analysis on whether Referendum 2010-01, rather than Ordinance 2008-28, was local or special legislation, but the error has no determinative effect. Because the ordinance in this case was passed by an assembly representing the entire Borough, the same factors are relevant to determining whether either the referendum or the ordinance was local or special legislation. Thus, for the purpose of our analysis, we will consider the superior court's analysis and the parties' arguments as applied to Ordinance 2008-28.

Our case law establishes that a law does not cease to be general and become local or special merely because it operates only in certain subdivisions of the state or in

certain areas.[19]  Instead, we have emphasized that the critical question is whether there are area-wide interests in the legislation: "General laws . . . are general . . . because their subject matter is of common interest to the whole state."[20]  We have also observed that a law may not be generally applicable where it creates a permanently closed class.[21]

We have previously examined the intent of the delegates to the Alaska Constitutional Convention to determine whether a law has areawide applicability.[22]  In *Boucher v. Engstrom*, we noted that the Report of the Committee on Direct Legislation, Amendment and Revision stated that special laws "are of interest to only one group of

---

[19]  *Boucher*, 528 P.2d at 461-62 (rejecting view expressed in *Walters v. Cease*, 394 P.2d 670, 672 (Alaska 1964), that legislation was local because it applied to "only a limited number of geographical areas, rather than being widespread in its operation throughout the state"), *overruled on other grounds by McAlpine v. Univ. of Alaska*, 762 P.2d 81, 85 (Alaska 1988); *Abrams v. State*, 534 P.2d 91, 94 (Alaska 1975) (citing *Boucher*, 528 P.2d at 461-62).

[20]  *Boucher*, 528 P.2d at 461-62 (alterations in original) (quoting 2 C. DALLAS SANDS, STATUTES AND STATUTORY CONSTRUCTION § 40.02, at 139-40 (4th ed.1973)).

[21]  *Bridges v. Banner Health*, 201 P.3d 484, 494-95 (Alaska 2008) (citing 2 NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 40.1, at 212-13 (6th ed. 2000)) (holding that the statutory definition of "health care facility" in AS 18.07.111 is not a special act because it does not create a permanently closed class); *Pebble Ltd. P'ship*, 215 P.3d at 1080 (holding that proposed regulation that affected only two proposed mines was generally applicable in part because it could apply to future mines); *but see id.* at 1078 n.63 (clarifying that "creation of a 'permanently closed class' does not necessarily constitute prohibited special legislation if the legislation bears a fair and substantial relationship to legitimate public purposes").

[22]  The local initiative power is statutory rather than constitutional in origin. *See Alliance of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough*, 273 P.3d 1128, 1139 (Alaska 2012). However, the delegates' intent remains relevant because AS 29.26.100 applies the constitutional ban on local or special legislation to the municipalities.

people or people in only one portion of the state."[23]  And in *Pebble Limited Partnership ex rel. Pebble Mines Corporation v. Parnell*, we observed that the constitutional delegates expressed views that the intent of article XI, section 7's ban on special legislation "was to prevent the initiation of legislation affecting local areas wherein the people of the state as a whole would be allowed to vote on issues which concerned only one locality."[24]

In both *Boucher* and *Pebble Limited Partnership* we held that initiatives were generally applicable although the effects of the initiatives would likely not be uniform statewide.  In *Boucher*, we held that an initiative that sought to relocate the state capital to a location other than Fairbanks or Anchorage was generally applicable.[25]  We explained that "[w]hile the two areas that initially will be most significantly involved are Juneau and the new capital site, the entire state will be affected on a long-term basis not only in regard to accessibility, but additionally as to such factors as potentially increased governmental efficiency flowing from a planned unified capital complex."[26]  Similarly, in *Pebble Limited Partnership*, we concluded that a proposed ballot initiative regulating large scale metallic mining operations was generally applicable despite the fact that the initiative's definition of a "large scale metallic mining operation" would encompass only

---

[23]     528 P.2d at 461 n.17.

[24]     215 P.3d 1064, 1078 n.57 (Alaska 2009) (quoting 2 Proceedings of the Alaska Constitutional Convention (PACC) 1132-34 (Dec. 19, 1955)) (internal quotation marks omitted).

[25]     528 P.2d at 462-64.

[26]     *Id.* at 461.

two proposed mines.[27] We observed that "[a]lthough the Pebble and Donlin Creek mines may be the only proposed mines currently affected by [the initiative], the language of the initiative is sufficiently broad that it would apply to any new [large scale metallic mines]."[28]

In *Baxley v. State*, by contrast, we reached the second part of the two-part analysis after concluding that a statute authorizing the amendment of four state oil and gas leases in the Northstar Oil Field focused on only one locality.[29] And in *Abrams v. State*, we held that a statute pertaining to the organization of the Eagle River-Chugiak Borough was "peculiar to the locality where it is applicable," noting that "[t]he subject matter can hardly be said to be of statewide interest or impact."[30]

Turning to Ordinance 2008-28, we conclude that the ordinance is more akin to legislation that we have previously held to be generally applicable. Borough residents who do not live in the general law cities have an interest in Ordinance 2008-28 and Referendum 2010-01 because they may shop and use other services in the general law cities. It is not dispositive that some residents may have a lesser interest in particular legislation, or that they stand to benefit from a referendum rejecting that legislation; most laws have a greater effect on some groups or some locations than others. The intent of the constitutional ban on local and special legislation was to prevent the state as a whole from voting "on issues which concern[] only one locality."[31] This same reasoning

---

[27]     215 P.3d at 1080-81.

[28]     *Id.* at 1080.

[29]     958 P.2d 422, 424, 430-31 (Alaska 1998).

[30]     534 P.2d 91, 92, 94 (Alaska 1975).

[31]     *Pebble Ltd. P'ship*, 215 P.3d at 1078 n.57 (quoting 2 PACC 1132-34 (Dec.
(continued...)

applies to borough ordinances and referendums. Certainly Ordinance 2008-28 is of greater concern to the residents of the general law cities, but given that it applies to three of the Borough's six cities (and it could apply to a fourth), and it affects all Borough residents who shop in the general law cities, it is of general concern to the residents of the entire Borough. We also observe that the general law cities in the Kenai Peninsula Borough do not constitute a closed class. The ordinance does not just apply to the four extant cities; it applies to a class of cities that could theoretically grow in the future.

Because Ordinance 2008-28 is of boroughwide interest and does not apply to a permanently closed class, it is generally applicable and does not violate AS 29.26.100's prohibition on local or special legislation. Consequently, we need not consider whether the ordinance bears a fair and substantial relationship to legitimate Borough purposes. Because Ordinance 2008-28 is not local or special legislation, Referendum 2010-01 does not violate AS 29.26.100's prohibitions on applying referendums to local or special legislation.

**B.** **Referendum 2010-01 Is Not Unenforceable As A Matter Of Law**.

Alaska Statute 29.45.700 grants power to the Borough Assembly to authorize a general law city to collect sales taxes on sources the Borough does not tax. The Borough argues that because the power to authorize taxation is exclusive to the Assembly, allowing a referendum to negate the authorization would unlawfully delegate power to the voters that was intended to be held only by the Assembly. The superior court did not address this argument, finding it unnecessary to do so in light of its ruling that Referendum 2010-01 constitutes local or special legislation. Price also does not address this issue on appeal. But because we hold that Referendum 2010-01 does not

---

[31](...continued)
19, 1955)) (internal quotation marks omitted).

violate the prohibition on local or special legislation, we consider the Borough's alternative argument that the referendum would be unenforceable as a matter of law.[32] We conclude that the referendum would be enforceable.

The Borough Clerk concluded that Referendum 2010-01 was unenforceable as a matter of law because it was in "direct conflict" with AS 29.45.700(a), which provides that "the assembly may by ordinance authorize a city to levy and collect sales and use taxes on other sources." The Clerk reasoned that "it is the 'assembly' which authorizes the city to tax sources that the borough does not," and "[s]uch a direct delegation to the assembly cannot be circumvented through the referendum process."

In *Whitson v. Anchorage*, we invalidated an initiative requiring that any new tax or tax-rate increase in Anchorage be ratified by a majority of voters on the basis that it conflicted with state law that specifically mandated that municipal taxes must be levied by general ordinance of the assembly.[33] Similarly, in *Municipality of Anchorage v. Frohne*, we held that an initiative that would have allowed voters to choose a municipal assembly district apportionment plan conflicted with the statutory scheme governing the adoption of local government charters.[34] And in *Griswold v. City of Homer*, we held that zoning by initiative is invalid because Alaska statutes provide for the establishment of a planning commission and related procedures that must be

---

[32] "We may affirm the grant of summary judgment on any grounds discerned from the record, even grounds not asserted by the trial court or parties." *Kuretich v. Alaska Trustee, LLC*, 287 P.3d 87, 88 (Alaska 2012) (citing *Kiernan v. Creech*, 266 P.3d 312, 319 (Alaska 2012); *Moore v. Allstate Ins. Co.*, 995 P.2d 231, 233 (Alaska 2000)).

[33] 608 P.2d 759, 760-61 (Alaska 1980).

[34] 568 P.2d 3, 7-9 (Alaska 1977).

followed, and zoning by initiative would bypass these statutory mandates and "exceed[] the scope of the legislative power granted by the legislature to the city council."[35]

Referendum 2010-01 presents none of the enforceability concerns that existed in *Whitson*, *Frohne*, or *Griswold*, because Referendum 2010-01 does not conflict with existing state law. Alaska Statute 29.45.700(a) provides that the borough assembly "may by ordinance authorize a city to levy and collect sales and use taxes on other sources." The Borough argues that under AS 29.45.700(a) "only the assembly may authorize the cities to tax different sources than the borough." But we need not consider whether voters could by direct legislation authorize general law cities to tax different sources than the Borough. Referendum 2010-01 does not authorize the general law cities to do anything; rather, if passed it would repeal an authorization previously made by the Borough Assembly. Nothing in AS 29.45.700 prohibits repealing by referendum an ordinance authorizing city taxation, so referendum 2010-01 does not directly conflict with this statute.

The Borough also argues that the referendum is "in direct conflict with the assembly's exclusive authority to determine whether cities may tax sources not taxed by the borough." This argument suggests a broader prohibition on repeal by referendum of enactments made in areas of the assembly's "exclusive authority."

We recently considered a similar issue in *Municipality of Anchorage v. Holleman*.[36] In that case, the municipality contended that the language of the municipal charter, which required the "assembly" to adopt a personnel policy and a personnel

---

[35]    186 P.3d 558, 563 (Alaska 2008).

[36]    321 P.3d 378, 383 (Alaska 2014).

classification system, granted exclusive authority to the assembly.[37] We concluded that these provisions were not intended to be exclusive: "while these provisions require the Assembly to enact labor-relations ordinances, they do not purport to grant the Assembly all authority in the area, to the exclusion of direct citizen legislation through initiative and referendum."[38] We recognized that "given the importance of the right of initiative and referendum, we will not readily imply such a broad addition to the subjects that cannot be addressed through the exercise of those rights."[39]

The Borough's position, if adopted here, would impermissibly limit the referendum power. The Alaska Constitution expressly empowers voters to nullify the exercise of legislative power by rejecting legislative acts.[40] And the legislature has no authority to restrict the referendum power.[41] Alaska Statute 29.26.100 extends the referendum power to the acts of local governments and similarly does not authorize local legislative authorities to restrict that power. Because many statutes delegate authority specifically to an "assembly" or other governing body, holding that enactments pursuant to such authority are not subject to referendum would impose a significant and unwarranted restriction on the referendum power.

Because Referendum 2010-01 does not conflict with or exceed the scope of the power granted to the Borough Assembly by AS 29.45.700(a) to authorize general

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *See* Alaska Const. art. XI, § 1 ("The people may . . . reject acts of the legislature by the referendum.").

[41] *Id.*

law cities to collect certain taxes, we conclude that Referendum 2010-01 would not be unenforceable as a matter of law.

## V.    CONCLUSION

For the reasons discussed, we REVERSE the superior court's judgment.